WO       IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

PEKIN INSURANCE COMPANY,   )
                           )
           Plaintiff,      )
                           )
     vs.                   )
                           )
MARIANNE S. KELLY, WILLIAM )
BONNAMY; and JEAN GLASS,   )
                           )   No. 2:14-cv-0820-HRH
           Defendants.     )
_____)

O R D E R

Cross-Motions for Judgment on the Pleadings

Plaintiff moves for judgment on the pleadings.[1]  This motion is opposed and defendant Kelly cross-moves for judgment on the pleadings.[2]  Oral argument was not requested and is not deemed necessary.

Background

Plaintiff is Pekin Insurance Company.  Defendants are Marianne S. Kelly, William Bonnamy, and Jean Glass.[3]

---

[1]Docket No. 38.

[2]Docket No. 46.

[3]Default has been entered against Bonnamy and Glass.  Docket Nos. 25 & 32.

-1-

Plaintiff issued a homeowners' liability policy, Policy No. EH0037583, to Kelly.[4] The policy provided homeowners' insurance to Kelly for the period of July 20, 2013 to July 20, 2014.[5]

On March 21, 2014, defendant Bonnamy filed a suit in state court against Kelly and others.[6] Bonnamy asserted four claims: 1) defamation, 2) intentional infliction of emotional distress, 3) invasion of privacy, and 4) false light. In his complaint, Bonnamy alleges that he is the significant other of defendant Glass and that Glass was previously involved in a romantic relationnship with David Hussy.[7] Bonnamy alleges that "[b]eginning in early March 2014, [Hussy and Kelly] began to send numerous defamatory emails and other communications to various third-parties" about Glass and that these emails "were sent ... in an attempt to damage Ms. Glass' reputation and cause her emotional harm."[8] Bonnamy further alleges that "[o]n March 6, 2014, Ms. Kelly sent a threatening and defamatory email to Mr. Bonnamy making similar threats to ruin Ms. Glass' reputation and accusing her of

---

[4]Exhibit A, Amended Complaint for Declaratory Judgment, Docket No. 34.

[5]Id. at 1.

[6]Bonnamy Complaint, Exhibit B, Amended Complaint for Declaratory Judgment, Docket No. 34.

[7]Id. at 3, ¶¶ 24-25.

[8]Id. at ¶¶ 29-30.

fraudulent and improper conduct in her dealings with Mr. Hussy."[9] Bonnamy also alleges that Kelly "during ... an open house, ... entered Mr. Bonnamy's and Ms. Glass' residence posing as an interested buyer, and ... took photographs of Ms. Glass' personal belongings and private papers belonging to Mr. Bonnamy."[10] Bonnamy also alleges that Kelly and Hussy have "made ... false and defamatory statements about Mr. Bonnamy to other third-parties" and that on March 10, 2014, Kelly sent another threatening email to Glass.[11]

In his defamation claim, Bonnamy alleges that Hussy and Kelly knew that the statements they were making "were false" or that they made the statements "in reckless disregard of their truth or falsity."[12] Bonnamy further alleges that Hussy and Kelly "falsely, maliciously and wrongfully intended to injure Mr. Bonnamy's good name and reputation and expose him to public contempt, suspicion and financial injury."[13] In his intentional infliction of emotional distress claim, Bonnamy alleges that Hussy and Kelly's "actions are and were done with the intent to harm or injure Mr. Bonnamy, or with

---

[9]Id. at ¶ 31.

[10]Id. at 4, ¶ 32.

[11]Id. at ¶¶ 33 & 35.

[12]Id. at 5, ¶ 39.

[13]Id. at ¶ 40.

complete disregard for Mr. Bonnamy's interests or welfare."[14] Bonnamy further alleges that Hussy's and Kelly's "unjustified and intentional conduct was and is purposely directed to injure and harass Mr. Bonnamy with the described accompanying and resulting emotional distress and mental anguish suffered by Mr. Bonnamy."[15] In his false light claim, Bonnamy alleges that Hussy and Kelly "either knew or acted in reckless disregard as to the falsity of the matters made public about Mr. Bonnamy."[16] In all four claims, in connection with his request for punitive damages, Bonnamy alleges that Hussy's and Kelly's "actions were intentional, wanton and reckless and showed ill will and demonstrated a reckless indifference disregard for the rights of and owed to Mr. Bonnamy...."[17]

On March 19, 2014, Glass filed a third-party complaint against Kelly and Jean Eannacone in an action that Hussy had filed against Glass. Glass alleges that Kelly has sent numerous defamatory emails about her (Glass) to third parties and that Kelly has sent a threatening and defamatory email about Bonnamy to third parties.[18] As did Bonnamy, Glass alleges that Kelly entered Glass' and Bonnamy's home during the open house for

---

[14]Id. at ¶ 45.

[15]Id. at ¶ 46.

[16]Id. at 7, ¶ 56.

[17]Id. at 5, ¶ 42; 6, ¶¶ 48 & 52; & 7, ¶ 57.

[18]Glass Third-Party Complaint at 4, ¶ 17; 5-6, ¶ ¶ 20 & 22; 7, ¶ 25; Exhibit C, Amended Complaint for Declaratory Judgment, Docket No. 34.

improper purposes.[19] Glass also alleges that Hussy and Kelly "sent email correspondence directly to Ms. Glass stating that they will ruin her reputation and continue their smear campaign against Ms. Glass' reputation."[20] Glass asserts two claims in her third-party complaint: 1) intentional infliction of emotional distress and 2) defamation. In her IIED claim, Glass alleges that Kelly's "actions are and were done with the intent to harm or injure Ms. Glass, or with complete disregard for Ms. Glass' interests or welfare."[21] Glass further alleges that Kelly's "unjustified and intentional conduct was and is purposely directed to injure and harass Ms. Glass with the described accompanying and resulting emotional distress and mental anguish suffered by Ms. Glass" and that "[b]ecause of" Kelly's "unjustifiable conduct and actions towards Ms. Glass, Ms. Glass has endured and continues to suffer severe emotional distress, mental anguish and anxiety."[22]

In her defamation claim, Glass alleges that Kelly "knew that the [alleged defamatory] statements were false, or proceeded to make such statements in reckless disregard of their truth or falsity."[23] Glass further alleges that Kelly "falsely, maliciously and wrongfully intended to injure Ms. Glass' good name and reputation and expose her to

---

[19]Id. at 6, ¶ 23.

[20]Id. at 7, ¶ 26.

[21]Id. at 8, ¶ 35.

[22]Id. at ¶¶ 36-37.

[23]Id. at 9, ¶ 41.

public contempt, suspicion and financial injury."[24] In connection with her request for punitive damages, Glass alleges that Kelly's "actions were intentional, wanton and reckless and showed ill will and demonstrated a reckless indifference disregard for the rights of and owed to Ms. Glass...."[25]

On May 12, 2014, Glass filed a direct action against Kelly and Eannacone.[26] Glass makes the same factual allegations as she did in her third-party complaint but she alleges four claims against Kelly in the direct action complaint: 1) intentional infliction of emotional distress, 2) defamation, 3) invasion of privacy, and false light. The IIED and defamation claims are identical to those in Glass' third-party complaint against Kelly as are Glass' punitive damages allegations. In her false light claim, Glass alleges that Kelly "either knew or acted in reckless disregard as to the falsity of the matters made public about Ms. Glass."[27]

Kelly tendered her defense of all three lawsuits and plaintiff "has agreed to provide Kelly with a defense" under a reservation of rights.[28] The policy was endorsed to include "personal injury coverage" which provides as follows:

---

[24]Id. at ¶ 42.

[25]Id. at ¶ 44.

[26]Exhibit D, Amended Complaint for Declaratory Judgment, Docket No. 34.

[27]Id. at 10, ¶ 52.

[28]Amended Complaint for Declaratory Judgment at 4, ¶ 14, Docket No. 34.

> If a claim is made or suit is brought against an "insured" for damages resulting from an offense, defined under "personal injury", to which this coverage applies, we will:
>
> 1. Pay up to our limit or liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and
>
> 2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the offense has been exhausted by payment of a judgment or settlement.[29]

The policy provides that

> "Personal Injury" means injury arising out of one or more of the following offenses, but only if the offense was committed during the policy period:
>
> A. False arrest, detention or imprisonment;
>
> B. Malicious prosecution;
>
> C. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
>
> D. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

---

[29]Policy No. EH0037583, Exhibit A at 11, Amended Complaint for Declaratory Judgment, Docket No. 34.

      E.      Oral or written publication of material that violates a person's right of privacy.[30]

The policy also provides:

    This insurance does not apply to:

      A.      "Personal Injury":

          1.      Caused by or at the direction of an "insured" with the knowledge that the act would violate the rights of another and would inflict "personal injury";

          2.      Arising out of oral or written publication of material, if done by or at the direction of an "insured" with knowledge of its falsity[.[31]]

On April 18, 2014, plaintiff commenced this action. In Count I of its amended complaint, plaintiff seeks a declaration that it has no duty to defend Kelly against the Bonnamy complaint. In Count II, plaintiff seeks a declaration that it has no duty to defend Kelly against Glass' third-party complaint. And, in Count III, plaintiff seeks a declaration that it has no duty to defend Kelly against Glass' direct action complaint.

Plaintiff now moves for judgment on the pleadings as to all three counts.[32] Kelly cross-moves for judgment on the pleadings as to all three counts.

---

[30]Id.

[31]Id.

[32]In its reply brief, plaintiff contends that Count II is moot because Glass' third-party complaint has been dismissed, but plaintiff continues to ask for relief as to Count II.

Discussion

"'Judgment on the pleadings is properly granted when [, accepting all factual allegations in the complaint as true,] there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law.'" Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012) (quoting Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009)). In this diversity case, the court applies Arizona law to the duty to defend issue. Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008).

Under Arizona law, "[i]t is well settled that a liability insurer's duty to defend is separate from, and broader than, the duty to indemnify."[33] Quihuis v. State Farm Mut. Auto. Ins. Co., 334 P.3d 719, 727 (Ariz. 2014). "The duty to defend arises at the earliest stages of litigation and generally exists regardless of whether the insured is ultimately found liable." INA Ins. Co. of N. Am. v. Valley Forge Ins. Co., 722 P.2d 975, 982 (Ariz. Ct. App. 1986). "A liability insurer's duty to defend generally arises '[i]f the complaint in the action ... upon its face alleges facts which come within the coverage of the liability policy.'" Quihuis, 334 P.3d at 727 (quoting Kepner v. W. Fire Ins. Co., 509 P.2d 222, 224 (Ariz. 1973)). "The duty to defend may work to an insurer's disadvantage" because "the insurer must defend claims potentially not covered and those that are groundless, false, or fraudulent." United Services Auto. Ass'n v. Morris, 741 P.2d 246, 250 (Ariz. 1987). In addition, "[i]n

---

[33]The issue of whether plaintiff has a duty to indemnify Kelly is not before the court.

Arizona, 'if any claim alleged in the complaint is within the policy's coverage, the insurer has a duty to defend the entire suit, because it is impossible to determine the basis upon which the plaintiff will <u>recover</u> (if any) until the action is completed.'" <u>Lennar Corp. v. Auto-Owners Ins. Co.</u>, 151 P.3d 538, 544 (Ariz. Ct. App. 2007) (quoting <u>W. Cas. & Sur. Co. v. Int'l Spas of Ariz., Inc.</u>, 634 P.2d 3, 6 (Ariz. Ct. App. 1981)). To the extent that a determination of the duty to defend depends on the interpretation of the policy, the court "interpret[s] an insurance policy according to its plain and ordinary meaning, examining it from the viewpoint of an individual untrained in law or business." <u>Desert Mountain Properties Ltd. Partnership v. Liberty Mut. Fire Ins. Co.</u>, 236 P.3d 421, 427 (Ariz. Ct. App. 2010).

Plaintiff argues that the claims asserted against Kelly do not come within the coverage of the policy because Kelly is alleged to have engaged in intentional conduct and the policy excludes coverage for intentional conduct. Plaintiff concedes that the "personal injury coverage" extends to claims involving "[o]ral or written publication of material that slanders or libels a person" but plaintiff argues that the claims asserted against Kelly fall into one of two exclusions in the policy: either the exclusion for "personal injury" "[c]aused by ... an insured with the knowledge that the act would violate the rights of another and would inflict 'personal injury'" or the exclusion for "personal injury" "[a]rising out of oral or written publication of material, if done by ... an 'insured' with knowledge of

its falsity[.]"[34]  Plaintiff argues that in all three complaints, Kelly is alleged to have acted intentionally and thus these exclusions apply.

"Intentional act policy exclusions impose restrictions on insurance companies' contractual obligations not inconsistent with public policy." Phoenix Control Systems, Inc. v. Ins. Co. of North Amer., 796 P.2d 463, 467 (Ariz. 1990).  "These exclusions are unique in that they impose restrictions upon insurance companies as well as on insureds.  Public policy forbids indemnifying a person for his own wilful wrongdoing." Id. "Determining whether an insured acts intentionally for purposes of insurance law is different than for purposes of tort law because there is no presumption in insurance law that a person intends the ordinary consequences of his actions." Id. "A two-prong inquiry is applied in Arizona to determine an insured's intent.  First, intent is determined by looking at the insured's subjective desire to cause harm." Id. "An act, even though intentional, must be committed for the purpose of inflicting injury or harm[.]" Id. "Second, if the nature and circumstances of the insured's intentional act were such that harm was substantially certain to result, intent may be inferred as a matter of law." Id. at 468.

Plaintiff argues that the complaints against Kelly are replete with allegations of intentional conduct.  As set out above, in the Bonnamy complaint, Bonnamy alleges that Kelly's actions were intentional, that she knew the statements she was making were false

---

[34]Policy No. EH0037583, Exhibit A at 11, Amended Complaint for Declaratory Judgment, Docket No. 34.

and that in making the statements she intended to cause Bonnamy harm.  Similarly, in Glass' complaints, Glass alleges that Kelly's conduct was intentional, that Kelly made statements that she knew were false, and that she made such statements with the intent of harming Glass.  Plaintiff insists that these allegations are sufficient to bring the claims being asserted against Kelly within the intentional conduct exclusion.

However, there are also allegations in all three complaints that suggest that Kelly's conduct fell outside the intentional act exclusion.  Bonnamy alleges that Kelly made statements "in reckless disregard of their truth or falsity"[35] and he alleges that Kelly acted either with the "intent to harm or injure" him or "with complete disregard for [his] interests or welfare."[36]  Similarly, in her complaints, Glass alleges that Kelly made allegedly defamatory statements "in reckless disregard of their truth or falsity" and that Kelly acted either with the "intent to harm or injure" Glass or "with complete disregard for Ms. Glass' interests or welfare."[37]  Reckless conduct, for purposes of an intentional act exclusion, is not the same as intentional conduct.

---

[35]Bonnamy Complaint at 5, ¶ 39, Exhibit B, Amended Complaint for Declaratory Judgment, Docket No. 34.

[36]Id. at ¶ 45.

[37]Glass Third-Party Complaint at 8, ¶ 35 & 9, ¶ 41, Exhibit C; Glass Direct Action Complaint at 7, ¶ 35; 8, ¶ 41; & 10, ¶ 52, Exhibit D; Amended Complaint for Declaratory Judgment, Docket No. 34.

For example, in <u>Mein ex rel. Mein v. Cook</u>, 193 P.3d 790, 792 (Ariz. Ct. App. 2008), the Meins filed negligence claims against the drivers of the two cars that were involved in an illegal drag race. Mr. Mein was a passenger in one of the cars and was injured when one of the cars crashed. <u>Id.</u> One of the questions before the court was whether the drivers had committed an intentional tort. <u>Id.</u> The court concluded that "the conduct of the drivers did not, as a matter of law, rise to the level of intentional conduct...." <u>Id.</u> at 796. The court explained that it had

> no doubt that speeding on a public road after an evening of drinking creates a substantial risk that harm may occur. But the evidence in this record does not support a finding that significant harm was certain or substantially certain to occur. It is not enough that there is a substantial risk of harm. To be deemed an intentional act, there must be <u>certainty</u> or substantial <u>certainty</u> that significant harm will result. Drag racing on a public street while under the influence of alcohol may constitute gross negligence, recklessness, or even wanton misconduct. But negligence "in any of its degrees" does not constitute intentional conduct.

<u>Id.</u> (internal citations omitted).

While plaintiff does not dispute that reckless conduct might be different from intentional conduct for purposes of an intentional conduct exclusion, plaintiff argues that Kelly has offered nothing that suggests that she acted with anything other than the intent to cause Bonnamy and Glass harm. As the <u>Phoenix Control Systems</u> court explained:

> "[I]f the insured can show facts which might establish that he acted with privilege (as in a sports injury case, for instance) or

> under claim of right recognized by law (as in self-defense), he will be permitted to explain his subjective intent, and it will be for the fact finder to determine whether he had an underlying purpose to injure."

796 P.2d at 467-68 (quoting <u>Transamerica Ins. Group v. Meere</u>, 694 P.2d 181, 188-89 (Ariz. 1984)). Plaintiff insists that because Kelly has not offered anything to rebut the allegations of subjective intent to cause harm, the only possible conclusion here is that she intended to cause harm.

The problem with plaintiff's argument is that Kelly does not have to rebut the allegations of subjective intent in this declaratory judgment action involving plaintiff's duty to defend. Plaintiff argues that Kelly cannot simply rely on the allegations in the underlying complaints once the insurer has come forward and made a factual showing that the suit is actually one for damages that do not fall within the policy's terms. Assuming that such a requirement exists, plaintiff has not made any <u>factual</u> <u>showing</u> that Kelly's conduct was intentional. All plaintiff has done is rely on the allegations in the underlying complaints. And, those complaints allege that Kelly acted intentionally <u>or</u> recklessly.

Plaintiff next argues that intent should be inferred here, which is the second prong of the intent analysis. This "prong, which presumes intent based upon the substantial certainty that harm would occur, is known as the <u>Steinmetz–Clark</u> presumption." <u>Irvin v. Lexington Ins. Co.</u>, Case No. 1 CA–CV 09–0270, 2010 WL 3450986, at *11 (Ariz. Ct. App. Sept. 2, 2010). "The <u>Steinmetz–Clark</u> presumption applies 'if the insured's claim that he did

-14-

not intend or expect the injury flies in the face of all reason, common sense and experience.'" Id. (quoting Western Agric. Ins. Co. v. Brown, 985 P.2d 530, 532 (Ariz. Ct. App. 1998)).

It seems to the court that it would fly in the face of all reason, common sense, and experience to say that Kelly did not intend or expect the injury that Bonnamy and Glass are alleged to have suffered. However, given that Arizona recognizes negligent defamation as a cause of action, see Green Acres Trust v. London, 688 P.2d 617, 625 (Ariz. 1984), it is possible that under the facts alleged in Bonnamy's and Glass' complaints, Kelly's conduct might be found to be negligent and not intentional. Because some of Kelly's conduct may prove to have been negligent, and not intentional, plaintiff has a duty to defend all of the claims made against Kelly.

## Conclusion

Based on the foregoing, plaintiff's motion for judgment on the pleadings[38] is denied. Kelly's motion for judgment on the pleadings[39] is granted. The clerk of court shall enter judgment dismissing plaintiff's complaint with prejudice as to all three defendants. See In re First T.D. & Inv., Inc., 253 F.3d 520, 532 (9th Cir. 2001) ("if an action against the

---

[38]Docket No. 38.

[39]Docket No. 46.

answering defendants is decided in their favor, then the action should be dismissed against both answering and defaulting defendants").

DATED at Anchorage, Alaska, this 25th day of November, 2014.

/s/ H. Russel Holland
United States District Judge